**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LEROY SWAINGAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-1154** |
| **BURL CAIN, WARDEN** | **SECTION "N"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Leroy Swaingan ("Swaingan"), is an inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On January 23, 1989, Swaingan and a

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 8. Swaingan was in the Louisiana State Penitentiary at the time of the filing of this petition. Rec. Doc. No. 1.

co-defendant, Kirk Bowers, were charged by bill of information in St. Charles Parish with the first degree robbery of a Time Saver store in Paradis, Louisiana.[3]

The record reflects that, shortly after midnight on December 11, 1988, two men walked into a Time Saver store in Paradis, Louisiana, and selected a bottle of Thunderbird wine.[4]  The men then approached the register.  As the cashier rang up the sale, one of the men pointed a gun at her and ordered her to hand over the money in the register.  The men left the store with the money, the wine, some cigarettes, and some food stamps, all taken from the store.

The cashier immediately telephoned the police to report the crime.  As she did so, she noticed a "big, white" four door car pass very slowly in front of the store.  She informed the police about the car, and gave a description of the perpetrators.  She described them as two black males, one somewhat taller than the other, one wearing a blue flannel jacket with jeans and a white cap, and the other wearing a blue denim jacket with jeans.

About 12:17 a.m., State Trooper Al Willumitis was patrolling westbound on U.S. Highway 90 near Boutte, approximately three miles east of the Time Saver.  He received a transmission concerning the robbery. The broadcast advised that the suspects were two black males wearing blue jeans and blue denim jackets, one suspect had a white hat, and that they were driving eastbound on Highway 90 in a large white four door vehicle.  Trooper Willumitis, watching the eastbound traffic, noticed a large white four door car going east.  He turned around and followed the car, and when he pulled directly behind it, he realized that it was a "very, very pale blue."  He pulled alongside the

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 3/4/02.

[4]The facts of the case were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Swaingan*, 563 So. 2d 1204, 1205-06 (La. Ct. App. 1990); St. Rec. Vol. 3 of 6, 5th Cir. Opinion, 1990-KA-89, p. 1-3, 1/6/90.

vehicle in the right lane. He saw that it was occupied by two black males who appeared to be wearing dark colored clothing. He advised the Sheriff's Office and stopped the vehicle.

Trooper Willumitis told the driver to step out of the car. As he complied, Trooper Willumitis observed that the driver was wearing a blue denim jacket and jeans. The trooper then called for back-up, believing that he had found the suspects. As the back-up unit arrived less than a minute later, Trooper Willumitis had the passenger, Leroy Swaingan, step out of the vehicle. When he did so, Swaingan did not close the automobile door. Sergeant Simoneaux, the back-up officer, watched the two suspects, and Trooper Willumitis approached the passenger side of the car. Shining his flashlight onto the front seat of the car, he saw a white baseball cap, a red knit hat, and a paper bag, with several packs of Camel cigarettes spilling out. On the floor of the passenger side, Trooper Willumitis observed a black pistol and a bottle of Thunderbird wine.

Recognizing that these items were listed in the radio dispatch, the Trooper placed the suspects under arrest. The two men were taken back to the Time Saver where they were identified by the cashier.

On July 31, 1989, the prosecutor elected to try the defendants separately, and he filed a separate bill of information against Swaingan on the same first degree robbery charge.[5] That same day, Swaingan was tried before a jury, and he was found guilty as charged.[6]

---

[5]St. Rec. Vol. 1 of 6, Trial Minutes (6 pages), 7/31/89; Bill of Information, 7/31/89; St. Rec. Vol. 3 of 6, Hearing Transcript, 7/31/89. The State also dismissed the prior joint bill of information. *Id.*

[6]*Id.*; St. Rec. Vol. 2 of 6, Trial Transcript, 7/31/89; St. Rec. Vol. 3 of 6, Trial Transcript (continued), 7/31/89.

The State filed a multiple bill on October 24, 1989, charging Swaingan as a fifth felony offender.[7]  The Trial Court held a hearing on October 30, 1989, at which it denied Swaingan's motion for new trial.[8]  The Court also determined that Swaingan was a fourth offender.  After waiver of legal delays, the Court sentenced Swaingan as a multiple offender to serve 40 years in prison without parole, probation, or suspension of sentence.[9]

On direct appeal, Swaingan's counsel argued that the Trial Court erred in finding admissible the evidence seized during the initial stop.[10]  On June 6, 1990, the Louisiana Fifth Circuit Court of Appeal resolved that this claim was without merit.[11]  The Court also noted an error patent on the face of the record where the Trial Court failed to advise Swaingan that he had a right to remain silent at the multiple offender hearing.  However, the Court found the error to be harmless and not prejudicial since Swaingan remained silent at that hearing.  The Court affirmed the conviction and sentence. Swaingan did not seek further review of this ruling.

## II.   Procedural History

On September 13, 1991, Swaingan submitted an application for post-conviction relief, which was filed by the Trial Court on November 8, 1991, raising three grounds for relief:[12] (1) it was error to impeach Swaingan with questions regarding whether he served time on his prior convictions, (2) the Trial Court erred in not granting a mistrial when the prosecutor asserted his opinion during

---

[7]St. Rec. Vol. 1 of 6, Multiple Bill, 10/24/89; Minute Entry, 10/24/89.

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes, 10/30/89; St. Rec. Vol. 3 of 6, Sentencing Transcript, 10/30/89.

[9]*Id.*

[10]*Swaingan*, 563 So. 2d at 1206; St. Rec. Vol. 3 of 6, 5th Cir. Opinion, 1990-KA-89, p. 3, 1/6/90.

[11]*Id.*

[12]St. Rec. Vol. 4 of 6, Uniform Application for Post-Conviction Relief, 11/8/91 (signed 9/13/91).

closing arguments rather than relying on the facts of the case, and (3) the State erred when it did not produce certified arrest registers during the multiple offender proceeding. On October 16, 1992, after obtaining a response from the State, the Trial Court dismissed Swaingan's application finding his claims to be meritless.[13]

Swaingan filed a writ application with the Louisiana Fifth Circuit on November 9, 1992, seeking review of the Trial Court's order.[14] The Court found merit in Swaingan's contention that the record did not support his adjudication as a fourth offender.[15] The Court held that the 1981 guilty plea was not properly relied upon, which may have prohibited the State's reliance on the 1971 conviction. The Court granted the writ application, vacated his sentence, and remanded the matter for resentencing.

In response to the remand, the Trial Court sentenced Swaingan on May 6, 1993, as a second offender to serve 30 years in prison, without benefit of parole, probation, or suspension of sentence.[16]

On appeal from this sentence, Swaingan's counsel argued that the resentencing violated the prohibition against double jeopardy, an argument the Court rejected.[17] Counsel also argued that the Trial Court erred in failing to hold an evidentiary hearing to determine the validity of the assertions in the multiple bill. The Court agreed and held that the Trial Court should have re-evaluated the

---

[13]St. Rec. Vol. 4 of 6, Trial Court Order, 10/16/92.

[14]St. Rec. Vol. 3 of 6, 5th Cir. Writ Application, 92-KH-996, 11/9/92 (signed 11/1/92, postmarked 11/6/92).

[15]St. Rec. Vol. 4 of 6, 5th Cir. Order, 92-KH-996, 3/12/93.

[16]St. Rec. Vol. 1 of 6, Minute Entry, 5/6/93; St. Rec. Vol. 4 of 6, Transcript of Re-Sentencing, 5/6/93.

[17]*State v. Swaingan*, 630 So. 2d 300, 300-01 (La. Ct. App. 1993); St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 93-KA-572, p. 2, 12/28/93.

evidence in support of the multiple offender adjudication in light of its prior ruling. On December 28, 1993, the Court again vacated the sentence and remanded the matter for a hearing and resentencing.[18]

On June 21, 1994, the Trial Court held a hearing and adjudicated Swaingan to be a second offender.[19] The Court sentenced him to serve 30 years in prison without benefit of parole, probation, or suspension of sentence. Swaingan did not appeal this sentence and it became final five days later, on June 27, 1994. *See Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction and sentence are final when the state defendant does not timely proceed to the next available step in the state appeal process); *see also*, *Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's conviction became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914).[20]

In the meantime, on June 13, 1994, prior to the resentencing, the clerk of this court filed Swaingan's first federal petition for habeas corpus relief in Civ. Action No. 94-1665"N"(6). Swaingan raised three grounds for relief in that petition:[21] (1) the prior convictions in Case No. 82-155 and Case No. 82-269 were unconstitutional, (2) it was error to rely on the prior unconstitutional convictions to enhance his sentence, and (3) ineffective assistance of counsel.

---

[18]*Id.*

[19]St. Rec. Vol. 1 of 4, Minute Entry, 6/21/94.

[20]At the time of the conviction and resentencing, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So. 2d 336, 338 (La. 1985). Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

[21]C.A. 94-1665"N"(6), Rec. Doc. No. 1.

On October 18, 1994, the Court dismissed Swaingan's federal petition for failure to exhaust, noting that he had not sought review in the state appellate court or the Louisiana Supreme Court of the sentence imposed on June 27, 1994.[22]  His appeal to the United States Fifth Circuit Court of Appeals was eventually dismissed on December 21, 1994, upon Swaingan's motion to voluntarily dismiss.[23]

On January 20, 1995, Swaingan filed a writ application with the Louisiana Supreme Court seeking review of his claims.[24]  The Court denied the application on November 22, 1996, citing La. Code Crim. P. 930.8; *State ex rel. Glover v. State*, 660 So. 2d 1189 (La. 1995), and *State ex rel. Martin v. State*, 462 So. 2d 637, 638 (La. 1985).[25]

Seventeen months later, on May 19, 1998, Swaingan submitted a motion seeking to vacate and dismiss the multiple bill and a motion for relief from double jeopardy.[26]  Although both motions bear file stamps date May 22, 1998, the record does not contain any ruling on the related pauper applications or on the merits of either motion.  Also, neither of the motions appear on the Trial Court's docket sheet.

Five years later, between February 2, 2003, and September 22, 2003, Swaingan submitted several motions to the Trial Court, a motion to correct an illegal sentence and the multiple offender

---

[22]C.A. 94-1665"N"(6), Rec. Doc. Nos. 10, 11.

[23]C.A. 94-1665"N"(6), Rec. Doc. No. 20.

[24]St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 95-KH-0189, 1/20/95.

[25]*State ex rel. Swaingan v. State*, 683 So. 2d 290 (La. 1996); St. Rec. Vol. 4 of 6, La. S. Ct. Order, 95-KH-0189, 11/22/96.  In *State ex rel. Glover*, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under La. Code Crim. P. art. 930.8, even if the lower court addressed the merits or did not consider timeliness.  At the time, Article 930.8 provided a three-year period to file for post-conviction relief in the state courts. In *State ex rel. Martin*, the Louisiana Supreme Court held that a defendant's failure to challenge the constitutionality of a prior plea in a multiple offender proceeding bars review of the merits of that claim on appeal.

[26]St. Rec. Vol. 4 of 6, Motion to Vacate, 5/22/98; Motion Under Double Jeopardy, 5/22/98.

adjudication, a motion for evidentiary hearing, an amended motion to correct an illegal sentence, and a petition for writ of mandamus, all challenging his multiple offender sentence.[27] The Trial Court denied the motions by Order issued September 29, 2003.[28] The Louisiana Fifth Circuit denied Swaingan's subsequent writ application on November 22, 2003, finding no error in the Trial Court's ruling.[29]

In the meantime, between October 6, 2003, and April 21, 2004, Swaingan filed several more pleadings—including a petition for writ of habeas corpus and mandamus; an application for post-conviction relief, a motion and request for an evidentiary hearing, and a supplemental and amended motion for hearing and to show cause—in the Trial Court, requesting additional relief from his sentence.[30] In an order issued May 21, 2004, the Trial Court denied the petition for writ of habeas corpus and the application for post-conviction relief as untimely, and the Court denied the other motions as moot.[31]

---

[27]St. Rec. Vol. 5 of 6, Motion to Correct an Illegal Sentence, signed 2/2/03; Motion for Evidentiary Hearing, signed 7/25/03; Amended Motion to Correct an Illegal Sentence, 8/12/03 (signed 8/11/03); Petitioner for Writ of Habeas Corpus and Mandamus (signed 9/3/03); Petition for Writ of Mandamus, 9/22/03 (marked as moot).

[28]St. Rec. Vol. 5 of 6, Trial Court Order, 9/29/03.

[29]St. Rec. Vol. 6 of 6, 5th Cir. Order, 03-KH-1239, 10/22/03. The record provided by the State does not contain a copy of the writ application filed October 21, 2003.

[30]St. Rec. Vol. 5 of 6, Petition for Writ of Habeas Corpus and Mandamus (signed 10/6/03); Uniform Application for Post-Conviction Relief (signed 10/26/03); Motion and Request for Evidentiary Hearing (signed 12/29/03); Supplemental and Amended Motion for Hearing (signed 4/21/04).

[31]St. Rec. Vol. 5 of 6, Trial Court Order, 5/21/04.

On June 30, 2004, the Trial Court also denied Swaingan's amended petition for writ of habeas corpus, filed on May 14, 2004, as duplicative.[32] By separate order, the Court denied his motion for reconsideration as meritless.[33]

The Louisiana Fifth Circuit denied Swaingan's subsequent writ application on July 8, 2004, finding no error in the Trial Court's May 21, 2004, order.[34] The Court also denied his request for rehearing.[35]

Seven months later, on February 28, 2005, Swaingan submitted an application for post-conviction relief to the Trial Court raising three grounds for relief:[36] (1) he was never sentenced on the original conviction before being adjudicated a multiple offender; (2) the State relief on two unconstitutional prior convictions to enhance his sentence; and (3) ineffective assistance of counsel, where counsel allowed him to proceed without being timely sentenced on the original conviction. On November 7, 2005, the Trial Court dismissed the application as seeking untimely post-conviction relief.[37] The Trial Court also noted that Swaingan had captioned the application for his prior two cases, No. 82-155 and No. 82-269, but was seeking relief from his current criminal conviction, No. 88-0481. As such, the Court ordered the clerk to file a copy of the order in all of the cases.

---

[32]St. Rec. Vol. 6 of 6, Amended Petition for Writ of Habeas Corpus, 5/14/04 (signed 4/29/04); Trial Court Order 2, 6/30/04.

[33]St. Rec. Vol. 6 of 6, Motion in Objection to Trial Court's Order (signed 5/25/04); Trial Court Order, 6/30/04.

[34]St. Rec. Vol. 6 of 6, 5th Cir. Order, 04-KH-799, 7/8/04. The record provided by the State does not contain a copy of this writ application. However, the filing date appears on the face of the Court's order and has been confirmed by the Court by telephone call to the office of the clerk of the appellate court.

[35]St. Rec. Vol. 6 of 6, 5th Cir. Order, 04-KH-856, 7/23/04. The record provided by the State does not contain a copy of this writ application. However, the filing date appears on the face of the Court's order and has been confirmed by the Court by telephone call to the office of the clerk of the appellate court.

[36]St. Rec. Vol. 6 of 6, Post-Conviction Relief Application, 3/3/05 (signed 2/28/05).

[37]St. Rec. Vol. 6 of 6, Trial Court Order, 11/7/05.

Swaingan thereafter sought review of this order, referencing only the prior two case numbers on his writ application.[38]  The Louisiana Fifth Circuit, also referencing the two prior cases, denied his application on November 28, 2005, finding no error in the Trial Court's November 7, 2005, order.[39]

Swaingan returned to the Trial Court between May 8, 2006, and August 28, 2006, to file a motion in arrest of judgment, a supplemental and amended motion in arrest of judgment, a motion to show cause, a petition for writ of habeas corpus, a motion to quash the multiple bill, and a supplemental and amended petition for writ of habeas corpus.[40]  The Court denied the motions by order issued September 18, 2006.[41]

On September 28, 2006, Swaingan submitted another motion seeking to vacate and set aside the multiple bill.[42]  The Trial Court denied the motion on October 30, 2006.[43]

---

[38]The record provided by the State does not contain a copy of this writ application.  However, the filing date appears on the face of the Court's order and has been confirmed by the Court by telephone call to the office of the clerk of the appellate court.

[39]St. Rec. Vol. 6 of 6, 5th Cir. Order, 05-KH-935, 11/28/05.  Swaingan later filed another writ application, referencing his current criminal case, in the Louisiana Fifth Circuit on March 17, 2006.  The Court denied it finding that he had failed to present a ruling for them to review.  St. Rec. Vol. 6 of 6, 5th Cir. Order, 06-KH-192, 3/21/06.  The record provided by the State does not contain a copy of this writ application.  However, the filing date appears on the face of the Court's order and has been confirmed by the Court by telephone call to the office of the clerk of the appellate court.

[40]St. Rec. Vol. 6 of 6, Motion in Arrest of Judgment (signed 5/8/06); Supplemental and Amended Motion in Arrest of Judgment, 6/21/06 (signed 6/16/06); Motion to Show Just Cause, 7/20/06 (signed 7/18/06); Petition for Writ of Habeas Corpus, 8/16/06 (signed 8/14/06); Motion to Quash the Bill of Information (signed 8/21/06); Supplemental and Amended Petition, 8/28/06 (signed 8/21/06).

[41]St. Rec. Vol. 6 of 6, Trial Court Order, 9/18/06.

[42]St. Rec. Vol. 6 of 6, Motion to Show Cause, 10/10/06 (signed 9/28/06).

[43]St. Rec. Vol. 6 of 6, Trial Court Order, 10/30/06.

The Louisiana Fifth Circuit denied Swaingan's subsequent writ application on November 9, 2006, finding no error in the Trial Court's September 18, 2006, order.[44] The Court also denied his request for rehearing.[45] The Louisiana Supreme Court also denied Swaingan's related writ application on October 5, 2007.[46]

In the meantime, on January 26, 2007, Swaingan submitted another petition for writ of habeas corpus to the Trial Court seeking relief from his conviction and sentence.[47] The Trial Court denied the motion on January 30, 2007.[48]

## III.   **Federal Petition**

On February 22, 2007, the clerk of the United States District Court for the Middle District of Louisiana filed Swaingan's petition for federal habeas corpus relief, in which Swaingan raised two grounds for relief:[49] (1) the bill of information charging him with first degree robbery was not signed by the district attorney and the trial court lacked jurisdiction, and (2) the Trial Court refused to sentence the petitioner after the jury verdict for first degree robbery and this has denied him an appeal. The petition was transferred to this Court on February 28, 2007.[50]

---

[44]St. Rec. Vol. 1 of 6, 5th Cir. Order, 06-KH-830, 11/9/06. The record provided by the State does not contain a copy of this writ application.

[45]St. Rec. Vol. 6 of 6, 5th Cir. Order, 06-KH-882, 11/28/06. The record provided by the State does not contain a copy of this writ application.

[46]*State ex rel. Swaingan v. State*, 964 So. 2d 379 (La. 2007).

[47]St. Rec. Vol. 6 of 6, Application for Writ of Habeas Corpus, 1/29/07 (signed 1/26/07).

[48]St. Rec. Vol. 6 of 6, Trial Court Order, 1/30/07.

[49]Rec. Doc. No. 1-5.

[50]Rec. Doc. No. 1.

The State filed an answer in opposition to Swaingan's petition arguing that the federal petition was untimely filed.[51]  Swaingan filed a traverse in reply to the State's opposition arguing that he should not be denied review of his claims because he was never sentenced, which deprived him of the ability to appeal.[52]

## IV.   Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[53] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 12, 2007.[54]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

---

[51]Rec. Doc. No. 4.

[52]Rec. Doc. No. 5.

[53]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[54]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of the Middle District filed Swaingan's petition on February 22, 2007, when the filing fee was paid.  Swaingan's signature on the petition is dated February 12, 2007.  This is the earliest date on which he could have submitted the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his *pro se* petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

In this case, the State argues that Swaingan's petition was not timely filed. The Court's review of the record confirms that the State's limitations defense has merit.

## V.    Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[55] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Swaingan's conviction became final on June 27, 1994, which was five days after the Trial Court sentenced him as a second offender and Swaingan did not seek reconsideration of the sentence or review by the Louisiana Fifth Circuit. *See Burton v. Stewart*, 549 U.S. 147 (2007) (in criminal case, judgment includes conviction and sentence, so the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A) (2006)).

Under the plain language of § 2244, Swaingan had until June 27, 1995, to file a timely federal application for habeas corpus relief and he failed to do so. However, the Fifth Circuit has granted habeas petitioners one year after the effective date of the AEDPA within which to file timely

---

[55]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here: (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

petitions pursuant to 28 U.S.C. §§ 2254 and 2255. *Flanagan*, 154 F.3d at 200; *United States v. Flores*, 135 F.3d 1000, 1004 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999).

The court in "*Flores* concluded that habeas petitioners must be afforded a reasonable time after AEDPA's effective date for the filing of petitions for collateral relief based upon claims that would otherwise be time-barred before AEDPA's April 24, 1996 effective date." *Flanagan*, 154 F.3d at 200 (citing *Flores*, 135 F.3d at 1004-05). "[P]etitioners . . . whose claims would otherwise be time-barred prior to the April 24, 1996 effective date of AEDPA, now have one year after the April 24, 1996 effective date of AEDPA in which to file a § 2254 petition for collateral relief." *Id.* (citing *Flores*, 135 F.3d at 1005).

Because Swaingan's conviction became final almost two years <u>before</u> the AEDPA's effective date, he was required to file the instant federal habeas petition no later than April 24, 1997. Swaingan submitted his federal petition on February 12, 2007, almost ten years after the allowable grace period expired, and it must be dismissed as untimely, unless the one-year grace period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259

(5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Swaingan's grace filing period began to run on April 25, 1996, the day after the effective date of the AEDPA. The filing period ran for 365 days, until April 24, 1997, when it expired. Swaingan had no properly filed state post-conviction or other collateral review pending during that time period.

The Court recognizes that Swaingan presented a writ application to the Louisiana Supreme Court on January 20, 1995, that was awaiting a ruling during the time period and when the AEDPA went into effect. However, that writ application was submitted more than 30 days after the related decision by the Louisiana Fifth Circuit issued April 13, 1994. La. S.Ct. R. X§5 provides that an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment. A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-19 (5th Cir. 2008). Swaingan's petition did not interrupt the grace period or toll any of the time after the effective date of the AEDPA.

Even if a reviewing Court were to allow tolling for the duration of that writ application, until it was denied on November 22, 1996, Swaingan's federal petition is still untimely. Under this alternative calculation, the grace filing period would have been tolled from April 24, 1996 until November 22, 1996, when the Louisiana Supreme Court ruled. Swaingan's grace filing period would begin to run the next day, November 23, 1996, and would do so for 365 days, until Monday, November 24, 1997, when it expired. Swaingan also had no properly filed state post-conviction or other collateral review pending during that time period.

His next state court pleading was not submitted to the Trial Court until May 19, 1998, when he signed the motion to vacate filed in on May 22, 1998. This filing, and all of Swaingan's subsequent filings, were made after the one-year grace filing period had already expired and do not impact the tolling analysis. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848. The petitioner has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.

The Court also notes that the reservation of rights made by the Court upon dismissal of Swaingan's prior federal habeas does not affect the limitations discussion herein.[56] Swaingan did not return to this Court after exhausting the claims raised in that prior petition, which challenged the multiple offender proceedings and sentence. Furthermore, the claims in this petition, which challenge the underlying conviction and his appeal rights, are wholly different from those in his prior petition. Swaingan emphasizes this in his traverse.[57] Swaingan's lack of diligence and extremely long delay in returning to this Court with completely different claims is no basis for equitable tolling or forgiveness of the untimely nature of this petition. In addition, the reservation by the Court was made almost two years before the effective date of the AEDPA on April 24, 1996, and the implementation by that law of the one-year time limit for filing federal petitions for habeas corpus relief, a law by which this Court must abide.

---

[56]*See* Civ. Action No. 94-1665"N"(6), Rec. Doc. Nos. 10, 11.

[57]Rec. Doc. No. 5.

Swaingan's federal petition is deemed filed on February 12, 2007, which is almost ten years after the AEDPA grace filing period expired on April 24, 1997, or alternatively on November 24, 1997. His federal petition must be dismissed as untimely filed.

## VI.  Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Leroy Swaingan's petition for issuance of a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 29th day of September, 2009.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**